UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In Re:

TERRI BEEBE and                                    Chapter 7
ANDREW BEEBE,                                      Case No.: 09-60661

                          *Debtors.*

_____

APPEARANCES:

SELBACH LAW FIRM, PLLC                    JAMES F. SELBACH, ESQ.
*Attorneys for the Debtors*               Of Counsel
One Lincoln Center
Suite 180
Syracuse, New York 13211


OFFICE OF THE UNITED STATES ATTORNEY      WILLIAM F. LARKIN, ESQ.
*Attorneys for the United States Small Business Association* Assistant U.S. Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Before the Court is the motion of Terri and Andrew Beebe ("Debtors") brought pursuant

to 11 U.S.C. § 362(k),[1] filed on June 17, 2009, wherein Debtors request sanctions against the

federal government in the form of an award of actual damages for emotional distress and

attorneys' fees and costs.  (ECF No. 9.)  Debtors have proven that the United States Small

Business Administration ("SBA") willfully violated the automatic stay imposed by their Chapter

7 bankruptcy filing on March 20, 2009 (ECF No. 1), on three separate occasions.  First, on April

_____

[1] This subsection of 11 U.S.C. § 362 was formerly designated as § 362(h) prior to the enactment
of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").
Unless otherwise indicated, all future section references herein relate to Title 11 of the United
States Code, 11 U.S.C. §§ 101–1532, as amended by BAPCPA.

26, 2009, SBA sent Mrs. Beebe a notice stating that her SBA loan was overdue and requesting payment in the amount of $73 no later than May 10, 2009. Second, on May 11, 2009, SBA sent Mrs. Beebe a past due notice stating that her SBA loan was past due and requesting payment in the amount of $146 on or before May 25, 2009. Third, on June 3, 2009, SBA sent Mrs. Beebe a final notice advising that her loan would be referred to a liquidation office unless she either immediately remitted $219 to bring her delinquent loan current or contacted the loan servicing assistant named therein to make alternate payment arrangements. (ECF No. 31, Stipulated Exs. 4–6.)

SBA filed opposition to Debtors' motion on July 30, 2009 (ECF No. 13), and the Court first heard the matter on August 6, 2009. The Court issued an Order granting Debtors' motion on August 22, 2009, in part, finding that SBA willfully violated the automatic stay. (ECF No. 17.) The Court also indicated that an evidentiary hearing would be required to determine the amount of damages, if any, suffered by Debtors as a result of SBA's conduct. SBA sought leave to appeal (ECF No. 18), which the Honorable Gary L. Sharpe, United States District Judge, denied as interlocutory under 28 U.S.C. § 158 by Memorandum-Decision and Order dated October 14, 2009 (ECF No. 21). On the same date, judgment was entered in the district court and docketed in Debtors' bankruptcy case (ECF No. 22), thus restoring the matter to this Court's docket for an inquest hearing. Following a series of adjournments, the Court issued a Scheduling Order on February 23, 2010, setting the evidentiary hearing for March 29, 2010. (ECF No. 26.)

The evidentiary record on the limited issue of damages consists mainly of Mrs. Beebe's hearing testimony. (Hr'g Tr. Aug. 6, 2009, ECF No. 37.) Following the submission of post-hearing memoranda of law by Debtors and SBA on March 30, 2010 (ECF No. 32), and May 3, 2010 (EFC No. 39), respectively, the Court took the matter under submission. The following

now constitute the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## JURISDICTION

The Court has core jurisdiction to hear and determine this contested matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A), and 1334(b).

## FACTS

The facts in this matter are undisputed. Mrs. Beebe testified that Debtors filed for bankruptcy protection after making monthly payments of approximately $400 for nearly a year to a debt settlement company, which failed to significantly reduce their credit card debt. (Hr'g Tr. at 4.) Prior to filing, their creditors were calling and sending letters daily. (*Id.*) After meeting with their bankruptcy attorney, Peter A. Orville, Esq., Debtors believed that they would be protected from creditors once they filed for bankruptcy relief. (*Id.* at 5.)

Debtors listed in their petition Mrs. Beebe's indebtedness to SBA for a flood loan in the approximate amount of $7,000. (*Id.*) Mrs. Beebe acknowledged that she fell behind in her payments to SBA in late 2008 (*id.* at 17), and that she and her husband filed for bankruptcy protection in the spring of 2009. Notwithstanding the fact that Debtors listed SBA as a creditor, they received three post-petition collection letters from SBA. Although Mrs. Beebe testified that SBA's communications initially made her upset and fearful because she assumed that the federal government's debt may not have been included in Debtors' bankruptcy filing (*id.* at 9–11), she also testified that she called Mr. Orville pursuant to his instruction to do so when contacted by creditors and when she received the first SBA communication. She delivered the letter to Mr. Orville's office and was contacted shortly thereafter by Mr. Orville's office and told "not to worry about it." (*Id.* at 21–23.) She heeded his advice and in fact did not worry about it and also

did not worry when she received the second SBA communication. (*Id.* at 22–24.) As to the third SBA communication, Mrs. Beebe delivered the letter to Mr. Orville's office upon receipt. She advised Mr. Orville that she was concerned because the letter threatened collections activity. (*Id.* at 25.) She was again assured that Mr. Orville's office would take care of the matter, and she testified that she no longer had any cause for concern once the third and final communication was placed in her counsel's hands. (*Id.*)

Mrs. Beebe further testified that she did not seek medical care or treatment after reading SBA's letters and that Debtors did not suffer any pecuniary loss as a result of SBA's actions. (*Id.* at 26.)

In support of Debtors' request for attorneys' fees and costs, Mr. Selbach submitted contemporaneous time records showing 15.5 hours billed at a rate of $250 per hour, totaling $3,875, and 6.6 hours billed at a rate of $125 per hour, totaling $825, for aggregate attorneys' fees in the amount of $4,700. (ECF No. 33.) Mr. Selbach did not separately include a specific dollar amount for costs.

## ARGUMENTS

The Court has vetted Debtors' Post-Hearing Memorandum of Law and found that it consists almost entirely of a synopsis of the well-settled § 362(k) standards, without a focused application of the same to Mrs. Beebe's circumstances. Debtors generally allege only that Mrs. Beebe's stress and anxiety returned when SBA began its post-petition collection efforts. In light of the facts presented in this case, the Court presumes two reasons for Debtors' approach. First, Debtors argue that emotional distress damages should always be awarded as a matter of course for a willful stay violation, without the need for corroborating evidence and irrespective of the severity–or lack thereof–of the emotional harm allegedly suffered by the debtor. (Debtors' Post

Hr'g Mem. of Law at 1, 8.)  Second, the majority of Debtors' memorandum is devoted to the propriety of an award of attorneys' fees and costs incurred in connection with the prosecution of a willful stay violation.  Debtors contend that § 362(k) supports an award of attorneys' fees and costs even when other damages are not suffered or proven.  (*Id.* at 11–12.)  The very posture of this case leads the Court to question whether its prosecution is aimed at establishing precedent to (1) lower the bar for the recovery of emotional distress damages and (2) allow for the recovery of attorneys' fees for each and every willful violation of the automatic stay even if the Court finds that the debtor did not suffer any other damages as a result of the violation.

Debtors assert that the standard for § 362(k) relief was broadly defined by the Second Circuit in *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098 (2d Cir. 1990), to justify an award of actual damages for "*any* deliberate act taken in violation of a stay, which the violator knows to be in existence."  (Debtors' Post Hr'g Mem. at 7) (quoting *In re Crysen/Montenay Energy Co.*, 902 F.2d at 1105 (emphasis supplied by Debtors)).  Debtors argue that the Second Circuit did not require "any deliberate act *which causes damage to the debtor*" but could have in order to justify compensation or sanctions. *Id.* (emphasis supplied by Debtors).  Debtors therefore ask the Court to consider the deterrent purpose of § 362 and to follow the line of cases of the undersigned's predecessor and sister bankruptcy courts that have awarded actual damages for emotional distress even in the absence of corroborating medical or non-expert evidence.

With respect to the attorneys' fees and costs component of their request for damages, Debtors make certain policy arguments to advance their position that attorneys' fees and costs should be awarded absent any other compensable injury to the debtor.  They assert that when automatic stay rights are vindicated in private proceedings, all debtors benefit.  Further, drawing

a comparison to other federal so-called "fee shifting statutes," Debtors aver that the automatic stay is vital to the integrity of the bankruptcy system, thus the congressional policies underlying § 362 must be guarded even in the absence of other non-fee related compensable harm.[2]  (*Id.* at 5.)  Further, they contend that case law adopting a "no harm, no foul" approach to § 362 violations contradicts stated congressional intent and the governing standard espoused by the Second Circuit in *In re Crysen/Montenay Energy Co.*, as they interpret the same.

SBA sets forth multiple defenses to an award of damages under the circumstances presented in this case.  First, SBA argues that § 362(k) does not authorize damages for emotional distress, particularly against the federal government.  Second, SBA contends that § 106(a) does not waive the federal government's sovereign immunity for an award of emotional distress damages.  Further, SBA contends that Mrs. Beebe's hearing testimony established that Debtors did not sustain any actual damages and, in the absence of injury to Debtors, counsel is not entitled to an award of attorneys' fees and costs for prosecuting the stay violation.

## DISCUSSION

The Court recognizes that the automatic stay is of critical importance to both debtors and to the bankruptcy process.  *See* 3 COLLIER ON BANKRUPTCY ¶ 362.11 (15th ed. rev. 2008).  The legislative history of Title 11 describes the automatic stay as "one of the fundamental debtor protections provided by the bankruptcy laws."  H. R. Rep. No. 950595, at 340 (1978).  Its purpose is "to provide the debtor a breathing spell from his creditors" and to "permit the debtor

---

[2] For example, Debtors compare the Civil Rights Attorney's Fees Awards Act of 1976, codified at 42 U.S.C. § 1988, to § 362(k).  Arguably, both provide sources of compensation for attorneys in bankruptcy cases.  *See* COLLIER CONSUMER BANKRUPTCY PRACTICE GUIDE ¶ 5.06 (2009) (suggesting that this law applies in every action brought under Title 11 against governmental entities or officials).  Given the Court's determination, and the specific provision within § 362(k) for attorneys' fees to prevailing debtors in certain circumstances, the Court need not address in detail Debtors' reliance upon other federal or state non-bankruptcy laws.

to attempt a repayment plan or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Id.* In particular, § 362(a)(6) stays creditors, including governmental entities, from taking any act to collect, assess or recover a prepetition claim against debtors once their bankruptcy case is filed until relief of the stay is granted. This section "is intended to prevent creditor harassment of the debtor in attempting to collect prepetition debts." 3 COLLIER ON BANKRUPTCY ¶ 362.03[8][a]. It is this subsection that forms the statutory predicate for Debtors' motion.

Section 362(k)(1) states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees . . . ." 11 U.S.C. § 362(k)(1) (2006). This Court previously examined the issue of whether, and under what circumstances, emotional distress damages may be recovered in an award of actual damages under § 362(k)(1). *In re Burkart*, 2010 Bankr. LEXIS 385 (Bankr. N.D.N.Y. Feb. 9, 2010). Finding an "emerging consensus" in favor of the same, the Court adopted the standard espoused by the Ninth Circuit Court of Appeals and held that they can.[3] *Id.* at *12–13.; *see also* 3 COLLIER ON BANKRUPTCY ¶ 362.11[3] (citing circuit court of appeals cases for and against compensatory damages for emotional distress). However, as the Court therein qualified,

> A claim for emotional distress damages is sustainable, however, only upon a showing of 'clear evidence to establish that significant harm occurred as a result of the violation . . . .' *Dawson v. Washington Mut. Bank, F.A. (In re Dawson),* 390 F.3d 1139, 1148 (9th Cir. 2004). Emotional distress damages 'must be more than 'fleeting, inconsequential and medically significant' to be compensable.' *In re Griffin,* 415 B.R. 64, 68 (Bankr. N.D.N.Y. 2009) (quoting *Aiello v. Providian Fin. Corp.,* 257 B.R. 245, 250–51 (N.D. Ill. 2000), *aff'd* 239 F.3d 876, 881 (7th Cir. 2001). An individual may establish significant emotional distress damages by presenting corroborating medical evidence, or the Court may justifiably

---

[3] The Court in *Burkart* relied upon both pre- and post-BAPCPA case law to support its holding on this issue. Because BAPCPA did not substantively amend this subsection of § 362, which mandates damages for stay violations, pre-BAPCPA case law continues to have precedential value. *In re Calloway,* 2009 Bankr. LEXIS 1615, at *15 n.17 (Bankr. D. Ariz. May 26, 2009).

presume the same where, 'for example, the debtor is physically threatened, the violative act constitutes an invasive and personal attack, or a tangible and substantially adverse action results from the stay violation.' *Id.*

*Burkart*, at *13–14.

As set forth above, both Debtors and SBA, for varying reasons, ask the Court to reexamine the issue of the redressability of emotional distress damages in the event of a willful stay violation. Debtors, on the one hand, ask the Court to consider the threshold question of proof, so as to establish a bright line rule that every willful stay violation causes inherent emotional harm to the debtor so as to be compensable, which the Court must readily reject. While the Court acknowledges that some bankruptcy courts require either no showing or a minimal showing of emotional distress in awarding damages, this Court respectfully declines to follow suit.[4] As articulated by the Court in *Burkart*, more than a minimal showing or generalized assertion of harm is required if a debtor is to prevail on an emotional distress claim under

---

[4] To ensure a complete record, the Court notes that it did review the decisions of the undersigned's predecessor cited by Debtors' in their post-hearing memorandum in support of the proposition that damages are recoverable even when "no evidence [is] submitted in support" or without expert testimony. (Debtors' Post Hr'g Mem. of Law at 22–23). Specifically, Debtors cite *In re Firnstein*, Ch. 13 Case No. 03-66792, slip op. at 3 (Bankr. N.D.N.Y. Aug. 17, 2004) (awarding $10,000 as and for emotional distress damages where "the seriousness of the continuing stay violation [was] obvious"), and *In re Hafele*, Ch. 13 Case No. 99-63036, slip op. at 11 (Bankr. N.D.N.Y. Aug. 19, 2002) (awarding $200 as and for emotional distress damages where the debtor experienced "frustration and aggravation"). Debtors also cite *In re Williams*, Ch. 7 Case No. 03-64481, slip op. at 3 (Bankr. N.D.N.Y. Apr. 19, 2004) (awarding $10,000 as and for emotional distress damages where "the egregiousness of the stay violation [was] obvious"), but the official docket in *Williams* confirms that this Letter Decision and Order was later vacated by order dated September 28, 2006. (Ch. 7 Case No. 03-64481, ECF No. 33.) In any event, unlike the case *sub judice*, Retired Chief Judge Gerling was presented with testimony from the debtor in each case to support an award of damages. For example, Mr. Firnstein testified that "he grew anxious . . . . The situation was exacerbated by [his] having to undergo major surgery . . ., and . . . that he and his fiancée would have periodic arguments resulting from the continued collection acvitity." *In re Firnstein*, slip op. at 2. Similarly, based upon Mr. Hafele's testimony, it was apparent that he and his wife had been through a "stressful situation," which caused them to suffer frustration, aggravation, and emotional distress. *In re Hafele*, slip op. at 11. Thus, these cases are clearly distinguishable from the one presently under consideration by this Court.

§362(k). The Court sees no reason to revisit its holding regarding the circumstances under which an award of emotional distress damages may be rendered pursuant to this subsection.

SBA, on the other hand, urges the Court to adopt the opposite position and to conclude that the Court may never exercise its authority to award emotional distress damages against a private creditor or the federal government under § 362(k). The Court need not reach this question today. Mrs. Beebe, by her own admission, did not suffer emotional harm as a result of receiving SBA's collection notices, thus SBA's argument regarding whether emotional distress damages are ever justified for a willful stay violation is purely academic at this point.

Given that the record clearly demonstrates that Debtors were not emotionally or monetarily harmed, the Court's focus turns to Debtors' request for an award of attorneys' fees and costs. Preliminarily, the Court must recognize the decision and holding of the Honorable David N. Hurd, United States District Judge, in *Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery, PC)*, 2005 U.S. Dist. LEXIS 2046 (N.D.N.Y. Feb. 11, 2005), *aff'd* 172 Fed. Appx. 339 (2d Cir. 2006). Judge Hurd therein determined that damages of attorneys' fees and costs may be inappropriate where there are no actual damages. *Id.* at *15 n.4. Debtors contend that Judge Hurd "misinterpreted the statute" (Debtors' Post Hr'g Mem. at 7), and ask this Court to ignore the weight of the district court's ruling. Whether or not this Court is bound by the same, however, is of no consequence for purposes of this decision. *Compare In re Lane*, 2010 Bankr. LEXIS 18, *4–7 (Bankr. C.D. Ill. Jan. 12, 2010) (examining divergent case law on the issue of whether a decision of a single district judge in a multi-judge district establishes binding precedent upon all bankruptcy judges within the district under the doctrine of *stare decisis*, and concluding that it does not because bankruptcy courts are "units" of the district court rather than inferior to the district court for purposes of *stare decisis*), *with Irr*

*Supply Ctrs. v. Phipps (In re Phipps)*, 217 B.R. 427, 430 (Bankr. W.D.N.Y. 1998) (holding instead that "any court whose decisions . . . are subject to reversal by a single judge of another court is 'inferior' to the reversing court for *stare decisis* purposes"). This Court does not read *Yarinsky* as creating a bright line, "no harm, no foul" rule against the recovery of attorneys' fees and costs in § 362(k) matters. Rather, the Court agrees with Judge Hurd's conclusion that violations of the automatic stay that do not cause damages in and of themselves must be closely reviewed to guard against an "excessively litigious approach" to stay violations. *Yarinsky* at *15 n.4. Just as this court agrees with Judge Hurd, so too do other bankruptcy and district courts.

The Honorable Carla E. Craig, United States Bankruptcy Judge, recently issued a decision directly on point. In *In re Prusan*, 2010 Bankr. LEXIS 699 (Bankr. E.D.N.Y. Mar. 2, 2010), Judge Craig acknowledged that attorneys' fees and costs are recoverable under § 362(k), but declined to award the reimbursement of fees and costs incurred in connection with the prosecution of a willful stay violation where the debtor did not incur any costs in state court and he was not required to take any action to enforce the automatic stay. *Id.* at *10. Rather, "the only damages incurred by the [d]ebtor were the fees and costs of bringing [the § 362(k) motion] to recover punitive damages." *Id.* As Judge Craig stated,

> While attorneys' fees and costs are recoverable under § 362(k), the fees and costs must be reasonable and necessary. The policy of section 362[k], to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a cottage industry built around satellite litigation. It is well established that [r]easonable and necessary fees do not include unnecessary litigation costs.

*Id.* at *8–9 (internal citations and quotation marks omitted). *See also, e.g., Rosengren v. GMAC Mortg. Corp.*, 2001 U.S. Dist. LEXIS 13119, at 14 (D. Minn. Aug. 7, 2001) ("Attorneys are not at liberty to incur large legal fees simply because those fees will be shifted to their adversaries pursuant to Section 362[k]."); *In re Parks*, 2008 Bankr. LEXIS 1436, at *22 (Bankr. N.D. Ohio

May 6, 2008) (citing *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir. 1988)) (An award of actual damages must be reasonable and must be supported by the evidence.); *In re Hedetneimi*, 297 B.R. 837, 842–43 (Bankr. M.D. Fla. 2003) (the court may award attorneys' fees and costs even if a debtor suffered no other compensable harm, but the fee award must be reasonable and necessary).

The reasonableness and necessity of attorneys' fees and costs for the prosecution of a willful violation of the automatic stay must be judged on a case by case basis. While the Court stops short of imposing a bright line rule prohibiting the recovery of attorneys' fees and costs in the absence of evidence of any other damages, it cannot award the same under the circumstances of this case. Prosecution of the willful stay violation simply was not reasonable in this case to determine and enforce appropriate sanctions. The time and fees bear absolutely no relationship to the amount of debt SBA sought to collect, as SBA's collection letters sought payment in the maximum amount of $219, while Debtors' counsel seeks attorneys' fees in the amount of $4,700.00. *See, e.g., In re Mosher*, 2010 Bankr. LEXIS 1820, at *9 (Bankr. D. N.H. June 8, 2010) (the amount of pre-petition claims sought to be collected or, stated differently, the proportionality of the fee award to the damages sought, is one factor the court may consider when determining reasonableness of attorneys' fees). Further, Mrs. Beebe unequivocally and credibly testified that she did not suffer emotional distress or other tangible damages as a result of SBA's actions. Accordingly, it appears from Mrs. Beebe's testimony that there was little room for doubt regarding whether she was injured, or whether litigation was reasonable and necessary to vindicate Mrs. Beebe's rights or the congressional policies underlying § 362(k).

## CONCLUSION

For the foregoing reasons, Debtors are not entitled to an award of actual damages for emotional distress or for attorneys' fees and costs.

Accordingly, it is hereby

ORDERED, that Debtors' request for an award of actual damages pursuant to § 362(k)(1) is hereby denied in its entirety.

IT IS SO ORDERED.

Dated at Utica, New York
this 20th day of August 2010

_____
DIANE DAVIS
United States Bankruptcy Judge